ALVIN H. COHEN, Plaintiff, *v.* LOUIS BUNIN, Defendant.

Supreme Court, Special Term, New York County, March 27, 1944.

*Julius Weiss* for plaintiff.

*Samuel J. Cohen* for defendant.

PECK, J. This is an action to compel an assignment of a half interest in a patent and for an accounting of one half of the profits derived therefrom. Plaintiff contends that he was a joint inventor with the defendant and that the parties had agreed upon an equal ownership of their invention. The complaint alleges that in violation of the agreement and fraudulently, the defendant procured the patent posing as the sole inventor.

The patent covers a three-dimensional image (puppet) for producing animated colored pictures by stop-motion technique, the image comprising a hollow rubber envelope with colored rubber make-up and an internal mechanism consisting of ball-and-socket joints and sliding rods to maintain local portions of the envelope in distorted condition, said mechanism being operated by grasping the exterior of the envelope and distorting it to the desired shape. Pictures would be taken of the

image in various degrees of distortion and the sequence of pictures would constitute an animated cartoon.

It is conceded that for a period of fifteen months between October, 1936, and December, 1937, the parties worked together in the workshop of the plaintiff. What is in dispute is what the parties did during this period, who made the invention and when, and the arrangement between the parties governing their association.

The plaintiff is an insurance broker by vocation and a laboratory worker in chemicals and mechanics by avocation. He maintained a series of workshops adjoining his apartment in which he and his friends performed scientific and artistic work and experiments. The defendant is a professional puppeteer. The parties met through a mutual friend in October, 1936, and discussed the work of the defendant with puppets. According to the plaintiff, the defendant had developed a rather crude and seamy rubber envelope and desired to make a seamless skin and develop an internal mechanism by which the figure could be distorted, and the defendant posed his problems to the plaintiff. Shortly afterward, according to the plaintiff, and after satisfying himself by some experiments that he could help the defendant, he offered to collaborate with the defendant in developing a suitable rubber envelope and mechanism for stop-motion technique and invited the defendant to make use of his workshops — an invitation which was accepted upon the basis of a fifty-fifty division of the fruits of their labor.

The plaintiff contends that in the fifteen months which followed, the defendant worked in the plaintiff's workshops continuously and the plaintiff devoted his week-ends and evenings and occasional odd days to their joint enterprise, plaintiff supplying material and machinery at a cost of approximately $1,000, and that as a result of their joint ideas and work the invention of the patent was developed.

The defendant acknowledges the free and continuous use of the plaintiff's workshops during this period but contends that all parts of the invention had been developed and perfected by him before he met the plaintiff and that he had no problems to which the plaintiff addressed himself; that he accepted the plaintiff's invitation to use his workshop solely on a friendly basis and in return taught the plaintiff, as a hobbyist, whatever the plaintiff learned about puppets. The defendant also contends that he did not reduce the invention to practice until more than a year after severing his association with the plaintiff.

The parties agree that they parted company in December, 1937, as a result of a difference as to how animated puppets should be exploited, and that in 1939 the defendant applied for, and in 1941 received, a patent on the invention in question.

Aside from denying plaintiff's claims on the facts, the defendant advances certain legal contentions: (1) that the alleged fifty-fifty arrangement is insufficient to constitute a contract; (2) that in the absence of a contract, the court does not have jurisdiction to compel an assignment of an interest in a patent upon the basis of joint invention, because in such case the patent is void and a court may not require an assignment of a void patent; (3) that in any event there may not be an accounting because there may not be an accounting between joint inventors for their individual use of a patent.

The questions to resolve, therefore, are the authorship of the invention, the contribution, if any, made by the plaintiff and the basis on which any such contribution was made, and the appropriate protection for any rights which the plaintiff may establish.

In their claims the parties both profess too much; in addition, the defendant is inconsistent in his professions. While plaintiff claims novelty for parts of the invention which are manifestly old art, the defendant, in his effort to negative completely any contribution on the part of the plaintiff, contends that there is nothing novel about any part of the invention. Yet he clings tenaciously to the patent for himself and seeks to exclude the plaintiff from any use of the invention. And on the one hand, he claims that every element of the invention was perfected and used by him prior to 1934, while on the other hand, he claims that the invention was not reduced to practice until 1939.

The fact is that there is really nothing novel in the invention, except the use of the various elements in combination, the combination constituting the patent. I am unable to accept the defendant's contention, however, that this combination was perfected and used by him long before he met the plaintiff or his converse contention that the combination was something developed by him after he ended his association with the plaintiff. The defendant's attempt to disassociate the invention from the fifteen months of his collaboration with the plaintiff leaves these months of constant work in the plaintiff's workshops unsatisfactorily accounted for. I am satisfied that it was during this time and as a result of collaboration between the parties that the combination covered by the patent was developed. I find that the patent is a joint invention of the parties.

The plaintiff's claim of a contract does not stand up, however. Plaintiff's evidence on that score, aside from proof of joint invention, is that the parties agreed to work on a fifty-fifty basis. Such an agreement is entirely too loose and indefinite to encompass the material and necessary terms of a contract. At the time the alleged agreement was made, the parts were just starting their work together and there was no conversation about patenting anything or any business arrangement envisioned. In fact, the association was broken off at the time of their first business discussion and over differences between them as to business arrangements. There was no contract here which the court can define and certainly none which it can enforce. The alleged fifty-fifty arrangement, if made, however, and I find that it was made, does indicate that the parties were working on a joint basis presaging a joint invention.

The question which remains, therefore, is whether the court can give relief to the plaintiff on the basis of his being a joint inventor and not on the basis of contract. It is at this point that we meet the argument of the defendant that the court, particularly the State court, may not compel an assignment of a patent upon a finding of facts which would render the patent invalid (*Kennedy* v. *Hazelton*, 128 U. S. 667), it being the law that a patent taken out by only one of two joint inventors is void. According to the defendant, the plaintiff should be relegated to some procedure in the Federal court to have the patent declared invalid.

In the first place, there is no procedure in the Federal court by which a joint inventor can have a patent taken out by his coinventor declared invalid. (*Mowry* v. *Whitney,* 14 Wall. [U. S.] 434, 439; *Briggs* v. *United Shoe Co.,* 239 U. S. 48, 50.) In the second place, one in the position of this plaintiff is not required to take action which would result in invalidating the patent. It was settled by the United States Supreme Court in *Becher* v. *Contoure Laboratories* (279 U. S. 388), Mr. Justice HOLMES writing for a unanimous court, and in effect overruling the decision of the divided court in *Kennedy* v. *Hazelton* (*supra*), that a plaintiff having a right to an invention or patent may proceed in the State court to compel an assignment of the patent despite the fact that the evidence establishing the plaintiff's right would establish the invalidity of the patent if that were the issue and if the forum were one vested with jurisdiction over that issue. As stated by the court in *Liquid Carbonic Corp.* v. *Goodyear Tire & Rubber Co.* (38 F. Supp. 520, 526).

the dialectic of technical patent law does not place the subject of an invention beyond the pale of general equitable jurisdiction.

This plaintiff is entitled through this court to be put in the position that he would be in if this patent had been taken out as a joint invention. He would then have an undivided half interest in the patent, the right to use it and to license others to use it without accounting to the defendant. By the same token the defendant might use it and license others to use it without accounting to the plaintiff. (2 Walker on Patents [Deller's ed.] p. 1450; *Kabbes* v. *Philip Carey Mfg. Co.*, 63 F. 2d 255.)

Defendant will be directed to assign a one-half interest in the patent to the plaintiff, but will not be required to account to the plaintiff for any profits which he has derived from the use of the patent.